## CUNNINGHAM v BESSEMER TR CO, Exr

Ohio Appeals, 2nd Dist, Montgomery Co

No. 1039.   Decided May 11, 1931

B. M. Burns, and Thomas, Hyers & Layland, for Cunningham.
McClure and McClure, Pittsburgh, Pa., and Sigler & Denlinger, for Bessemer Trust Co.

ALLREAD, PJ.

Charles W. Palmer was originally a resident of the State of Pennsylvania and domi-

ciled at Pitcairn, Allegheny County. He first came to the Dayton Soldiers' Home in October, 1908, remained there during the winters and was discharged in March 1912.

On December 8, 1913 he was again received and remained in said home until the date of his death. He was subject to the rules of the institution and was released on furlough. These furloughs were usually given in the spring and summer and covered nearly half of the year. Palmer went to the Dayton Soldiers' Home in the life time of his wife and stayed there during the winter. His wife died either in the later part of 1915 or in the early part of 1916. She was buried at the cemetery near Pitcairn. Palmer then disposed of his real estate; sold his former home to his niece and her husband, Mr. and Mrs. Rhoades. He also sold the most of his furniture and belongings to his former home. He reserved the use of one room in his former home and certain of his furniture and this room he used largely when he returned to Pitcairn. It appears that after selling his home and furniture that he came to Dayton in the fall of 1916. It is claimed by counsel for plaintiff in error this constituted a crisis in his life and called for a new arrangement for the future. It is agreed upon both sides that up to this point Palmer's domicile was at Pitcairn, Allegheny County, Pennsylvania.

There may be some reason in holding that Palmer at this time was undecided as to his future residence. This is shown by the letter to his sister dated August 24, 1916. We do not have Palmer's version of his life from 1916 on, but there is evidence showing that at that time he was undecided and it does not appear that he really decided the question until the fall of 1924. At this time there is evidence to show that he must have voted in Jefferson Township, Montgomery County, Ohio at the general election occurring in the fall of 1924. This may have been the result of his negotiations with Dr. Rike and the correspondence with James and Coolidge as to his domicile.

A question is raised as to the competency of this evidence. An election officer was called as a witness and testified that he kept a copy of the registration and voting list of 1924 (the originals being destroyed) and near the bottom of the page is found the name Charles W. Palmer as having voted. It may be assumed that this was the same Charles W. Palmer under consideration in this case. We do not know his version as to the voting, but taken upon its face it would indicate that Palmer had then decided to transfer his domicile to Dayton, Ohio. Two years later it also appears from the testimony of certain witnesses that Palmer appeared at the voting place at Pitcairn, Pennsylvania, requested and was given a ballot and one of the judges struck his name off the list of voters. No one testified that they saw him deposit his ballot, but we think the fact is evident that he must have done so. It is not material how his name came to be upon the voting list at Pitcairn, but we have a right to assume that Palmer must have changed his domicile from Montgomery County, Ohio, to Allegheny County, Pennsylvania prior to the date of his voting in 1926.

This unexplained by any other evidence would tend to prove that Palmer was a resident of Pennsylvania at the time of voting in that county. There is no evidence tending to prove that he voted at any other time except in 1924 in Montgomery County, Ohio and 1926 in Allegheny County, Pennsylvania. In addition to this evidence as to Palmer voting in Allegheny County, Pennsylvania, in 1926, we have the testimony of Dr. W. R. Funk, a prominent business man of Dayton to the effect that he and Palmer had taken up the question of his domicile and that Palmer had stated to him that his domicile was, shortly prior to his death, at Pitcairn, Allegheny County, Pennsylvania. This testimony is corroborated by W. H. McCain who testified that Palmer said to him that his home was in Pitcairn, Allegheny County, Pennsylvania, Robert L. McGinn testified to the same effect. These witnesses are reputable witnesses and entirely disinterested so far as this controversy is concerned. We have the testimony of several of the relatives of Palmer over in Pennsylvania whose testimony corroborates the fact that he kept a home in one room of Mrs. Rhoades' home where he was privileged to come at any time and stay. It also appears that in the years from 1924 on to and including 1927 he made returns of personal taxes in Allegheny County, Pennsylvania. He made no such returns in Montgomery County, Ohio. Palmer also made entries in his bank books at the banks in Montgomery County a short time prior to his death that,

"I want my estate settled in Pa. I have no real estate in Ohio. Signed Charles W. Palmer."

Again the will itself was executed in the State of Pennsylvania and was placed on deposit with the Bessemer Trust Company in Pittsburgh, Pennsylvania where it has

remained until Palmer's death. In this will he recites the fact that he was at the date thereof a resident of Allegheny County, Pennsylvania.

He executed no other will or codicil so far as the record here shows. He allowed this will to remain in Pennsylvania and on deposit there until the time of his death. We cannot escape as a conclusion that some weight is to be attached to the recitals of his will and to the fact that it so remained until the time of his death as a presumption that the testator intended to have his estate settled in Pennsylvania.

In the case of **Wilberding v Miller, 90 Oh St, 28** the following is laid down in the syllabus:

"While the declaration of a testator in his will as to his domicile is not conclusive, yet when there has been no material change in the situation with reference to it, between the execution of the will and the death of the testator, such declaration is evidence of high character, and will determine the question in the absence of more convincing proof to the contrary."

In view of the changes in the life of Charles W. Palmer after his will was executed this presumption may not be of much avail, yet we think it is a circumstance of some weight in determining the question of his domicile. Taking all the evidence into consideration we reach the conclusion that the judgment of the Court of Common Pleas was correct as a matter of law and that his judgment is not against the tendency or the weight of the evidence and must therefore be affirmed.

Judgment affirmed.

HORNBECK and KUNKLE, JJ, concur.